## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**ANTHONY HUDSON**                                                          **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 2:23-cv-197-TBM-RPM**

**TRAVELERS CASUALTY**
**AND SURETY COMPANY**
**OF AMERICA,** *et al.*                                                    **DEFENDANTS**

### MEMORANDUM OPINION

*Pro se* Plaintiff Anthony Hudson filed suit against his local city and county officials and their insurance carriers, alleging violations of his rights under the First Amendment, Fourteenth Amendment, and under state law. This action arises from two separate issues: (1) Hudson's claim that he was entitled to a joint hearing before the Laurel City Council, the Jones County Board of Supervisors, and the Mayor of Laurel to discuss his issues with the relocation of the Mother's Day Blues Festival and the Black Rodeo; and (2) Hudson's attendance at a Laurel City Council meeting where he was interrupted and prohibited from speaking by certain City Council members.

The City Defendants and Defendant Travelers Casualty and Surety Company of America ("Travelers") have filed a Motion to Dismiss [26], asserting qualified immunity as a defense to Hudson's claims.[1] Similarly, the County Defendants and Defendant FCC Insurance/Brierfield Insurance Agency ("FCC") filed a Motion for Judgment on the Pleadings [38], also asserting qualified immunity.[2] Hudson has also filed a Motion for Relief [34] on Clerk's Denial of Default

---

[1] The City Defendants include Councilwoman Grace Amos, Councilman Anthony Thaxton, Councilwoman Shirley Keys Jordan, Councilman George A. Carmichael, Councilwoman Andrea Ellis, Councilman Jason Capers, Councilman James K. Kelly, and Mayor Johnny Magee.

[2] The County Defendants include County Supervisor Travares Comegy, County Supervisor Larry Dykes, County Supervisor Phil Dickerson, County Supervisor David Scrugg, and County Supervisor John Burnett.

Judgment, and a "Motion to Supplement the Record and Request for Summary Judgment on the Pleadings" [42].

In viewing the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that Hudson has plausibly pled a violation of his First Amendment right to free speech against Councilman George A. Carmichael, Councilwoman Andrea Ellis, and Councilman Anthony Thaxton, under both federal and state law, for allegedly interrupting his allotted time to speak at a City Council meeting and prohibiting him from further expressing his opinions and perspective regarding the alleged difficulties his community faces pertaining to police and the alleged neglect shown by the City Council in not providing resources to fix other issues. The remaining City Defendants, the County Defendants, Travelers, or FCC are entitled to qualified immunity as it relates to each of Hudson's federal law claims because he has not plausibly pled that such Defendants violated his rights under federal law. Additionally, Hudson fails to plausibly plead his state law claims asserted against the remaining City Defendants, the County Defendants, Travelers, or FCC.

For the reasons discussed below, the Motion to Dismiss [26] is granted in part and denied in part.[3] The Motion for Judgment on the Pleadings [38] is granted. Hudson's Motion for Relief [34] on Clerk's Denial of Default Judgment and "Motion to Supplement the Record and Request for Summary Judgment on the Pleadings" [42] are denied.

---

[3] The City Defendants and Travelers have joined in the County Defendants and FCC's Motion for Judgment on the Pleadings [38]. *See* [40].

# I. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citation omitted). To avoid dismissal under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 304-305 (5th Cir. 2021). In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hester*, 11 F.4th at 305 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation omitted). "The issue is not whether the plaintiff[] will ultimately prevail, but whether [he is] entitled to offer evidence to support [his] claim[s]." *Cook v. City of Dallas*, 683 F. App'x 315, 318 (5th Cir. 2017) (citation omitted). "The filings of a *pro se* litigant are to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022); *see also Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023) (Courts also liberally construe filings of *pro se* litigants).

## II. DISCUSSION

Hudson brings two First Amendment claims under federal law. He asserts that his right to petition the government for a redress of grievances was violated because of his belief that he was entitled to a joint hearing with the City Council, the County Board of Supervisors, and the Mayor to discuss his issues with the relocation of the Mother's Day Blues Festival and the Black Rodeo. He also alleges that his right to free speech was violated when certain City Council members stopped him from speaking during a City Council meeting. Hudson also attempts to assert two Fourteenth Amendment claims for violating his right to procedural due process, and his right to equal protection. The Defendants assert that Hudson's claims should be dismissed because they are entitled to qualified immunity. [26], p. 9; [39], p. 6.

Hudson also asserts state law claims against the Defendants for violations under Mississippi Constitution Article 3, breach of public bond, breach of contract, intentional infliction of emotional distress, and civil conspiracy.[4] [25], pps. 5-6. The Court will begin by addressing Hudson's federal

---

[4] Hudson has conceded his civil conspiracy claim, and such claim is dismissed with prejudice. *See Coleman v. City of Hattiesburg*, No. 2:16-cv-135-KS-MTP, 2018 WL 542975, at *2 (S.D. Miss. Jan. 24, 2018) (dismissing withdrawn

law claims against the City and County Defendants, then his federal law claims asserted against Travelers and FCC. Lastly, the Court will address Hudson's state law claims asserted against all Defendants.

## A. Federal claims against the City and County Defendants

The defense of qualified immunity is available to state actors who are sued under 42 U.S.C. § 1983. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Section 1983 provides redress for deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983. To state a section 1983 claim, Hudson "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal quotations omitted). The statute does not create any substantive rights; it simply provides a remedy for the applicable rights. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

"The question of qualified immunity must be addressed as a threshold issue because this issue determines a defendant's immunity from suit, that is, his or her ability to avoid a trial altogether, rather than merely his or her immunity from damages." *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

---

and abandoned claims with prejudice); *see* [41], p. 5 ("Plaintiff after further legal research feels that he cannot honestly continue this claim before the court so, pursuant to 41, Plaintiff would like to voluntarily dismiss this claim.").

U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quotation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). "A plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). Courts use a two-prong analysis to determine whether a defendant is entitled to qualified immunity. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The Court must decide, assuming Hudson's facts are true as the Court is required to do at this stage, (1) whether he has alleged a violation of a constitutional right and, if so, (2) whether the right was clearly established. *Id.* at 339. The Court may answer these questions in either order, but if both steps are satisfied, qualified immunity does not apply. *Pearson*, 555 U.S. at 242. The Court will begin by determining whether Hudson has alleged a violation of a constitutional right under the First Amendment, and will then make the same determination regarding his Fourteenth Amendment claims.

### 1.  First Amendment

#### a)  Right to Petition

"Among other rights essential to freedom, the First Amendment protects the right of the people . . . to petition the Government for a redress of grievances." *Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 382, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011). "The right to petition for

redress of grievances is among the most precious of the liberties safeguarded by the bill of rights." *United States v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983) (citation and quotations omitted). "Indeed, it was not by accident or coincidence [] that rights to freedom in speech and press were coupled in a single guarantee with the rights of the people peaceably to assemble and to petition for redress of grievances." *United States v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983) (citing United *Mineworkers of America, District 12 v. Illinois State Bar Association*, 389 U.S. 217, 323 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967)).

This right is infrequently invoked and rarely actually litigated. Also, when seeking the original understanding of this right to petition, the contours are unclear. For example, one noted founding era commentator said the right is largely duplicative of being a citizen within a country that has a republican form of government.[5] But others steadfastly believed that the right was fundamental to the American experience.[6]

"The first amendment protects an individual's right to petition his government for redress of grievances, but in order to invoke this constitutional protection [plaintiff] must establish that he had a reasonable basis for taking legal action." *United States v. Reeves*, 782 F.2d 1323, 1325 (5th Cir. 1986) (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76

---

[5] *See Joesph Story*, Commentaries on the Constitution 3:§§ 1887-88 (1833), reprinted in 5 The Founders' Constitution 207 (Philip B. Kurland & Ralph Lerner eds., 1987) ("§ 1887. This would seem unnecessary to be expressly provided for in a republican government, since it results from the very nature of its structure and institutions. It is impossible, that it could be practically denied, until the spirit of liberty had wholly disappeared, and the people had become so servile and debased, as to be unfit to exercise any of the privileges of freemen. § 1888. The provision was probably borrowed from the declaration of rights in England, on the revolution of 1688, in which the right to petition the king for a redress of grievances was insisted on; and the right to petition parliament in the manner has been provided for, and guarded by statutes passed before, as well as since that period.").

[6] *See St. George Tucker*, Blackstone's Commentaries 1:App. 299-300 (1803), reprinted in 5 The Founders' Constitution 207 (Philip B. Kurland & Ralph Lerner eds., 1987) ("In England, no petition to the king, or either house of parliament for any alteration in church or state, shall be signed by above twenty persons, unless the matter thereof be approved by three justices of the peace, or a major part of the grandjury in the county; nor be presented by more than ten persons. In America, there is no such restraint.").

L.Ed.2d 277 (1983)). Thus, the Fifth Circuit has said that "[a]ny deliberate impediment to access, even delay of access, may constitute a constitutional deprivation." *Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986).

Hudson claims his right to petition the government for a redress of grievances was violated because of his belief that he was entitled to a joint hearing with the City Council, the County Board of Supervisors, and the Mayor to discuss his issues with the relocation of the Mother's Day Blues Festival and the Black Rodeo regarding the local Fair Commissioners' alleged discriminatory actions to rid Laurel of the two events. [25], p. 3-4.

The Blues Festival was a festival historically held in Laurel, Mississippi, before it relocated to Hattiesburg, Mississippi. *Id*. at 2-3. The Fair Commissioners did increase rents and fees, but they ultimately could not reach an agreement with the promoters of the Blues Festival and the Black Rodeo on the rental rates and fees. *Id*. at 3; [39], pps. 17-18. Hudson argues that the Fair Commissioners engaged in "discriminatory actions to rid [Laurel] of the Mother['s] Day Blues Fest[ival] and the Black Rodeo." [25], pps 2-3. Hudson sent a demand letter requesting a hearing to the City Council and the County Board of Supervisors to discuss the Fair Commissioners' alleged discriminatory actions. *Id*. at 3. He claims they verbally told him that the local Fair Commissioners were a separate governmental entity and that the City Council and the County Board of Supervisors had no control over the Fair Commissioners' actions. *Id*. According to Hudson, however, the Fair Commissioners were required to obtain approval from the City Council and County Board of Supervisors before enacting any changes such as raising rents, and such approval was not obtained from the City Council. *Id*. Hudson alleges that "immediately after the [Fair] Commissioners succeeded in getting rid of the Mother Day Blues Festival and the Black

Rodeo, [they] approached the [] City Council and the County Board of Supervisors and requested $180,000.00 of taxpayers['] dollars to subsidize the operation[,] maintenance, and improvement of the Magnolia Center and Laurel Fairground." *Id.* at 3-4. Hudson took issue with the Fair Commissioners "run[ning] off thousands of dollars in revenue" and then requesting that taxpayers cover the shortfall. *Id.* at 4. Hudson then attended multiple City Council meetings where he reminded them of his request for a hearing and, eventually, he told the City Council that they had "violat[ed] their Oath of Office" by denying him a hearing. *Id.* at 3.

As a result, Hudson demanded a hearing before the City Council, the County Board of Supervisors, and the Mayor, collectively, to discuss the relocation of the Blues Festival and the Black Rodeo. [25]. He alleges that the City and County Defendants "refused" to give him a hearing. Although Hudson argues that he is entitled to a hearing with the City Council, County Board of Supervisors, and the Mayor, he has provided no legal authority showing such entitlement and the Court is unaware of any.

To the extent that Hudson seeks to petition the City Council, County Board of Supervisors, and the Mayor separately, rather than collectively as he alleges, there are no factual allegations indicating that the Defendants impeded his right to petition. Hudson has not alleged that he was prevented from petitioning such groups. In fact, he declined the local Fair Commissioners' executive director, Carrie Byrd's, attempt to add him to the Fair Commissioners' agenda. [39], pps. 3-4; [41], p. 2. Nor does he allege that he was barred from the City Council meetings, other governmental meetings or prevented from speaking to the various governmental officials about his concerns. [41], p. 3.

It seems he is most upset because he was not provided some type of individualized hearing to arbitrate the relocation of the Blues Festival and the Black Rodeo. But he does not provide any authority stating that he is entitled to an individualized joint hearing with all of his local city and county officials. The Fifth Circuit has stated that "any deliberate impediment to access, even delay of access, may constitute a constitutional deprivation." *Jackson*, 789 F.2d at 311. Absent allegations that the Defendants obstructed or prevented or stopped him from voicing his grievances, Hudson fails to show a violation of his right to petition. *See also Carota v. Jame*s, No. 23-854, 2024 WL 618783, at *1 (2d Cir. Feb. 14, 2024) (district court did not err in concluding that plaintiff failed to "allege any facts to suggest that defendants in any way obstructed him from submitting his grievance complaints.") (internal quotations omitted); *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (requiring plaintiff to show that defendants "inhibited him in the exercise of his First Amendment freedoms"); *Hamilton v. Cnty. of Madera*, No. 1:20-cv-00484-EPG, 2021 WL 5771669, at *3 (E.D. Cal. Dec. 6, 2021) ("The First Amendment right to petition claim fails because Plaintiffs have not alleged any violations of a right guaranteed by the First Amendment . . .").[7] Without more, Hudson has not alleged a violation of his First Amendment right to petition the government for a redress of grievances, the City and County Defendants are entitled to qualified immunity on this claim.[8]

---

[7] To be sure, Hudson clearly complained to the governmental entities about his disagreement concerning the relocation as he sent emails, a letter, and spoke to the City Council on several occasions. *See* [25], pps. 2-3; [25-1]; [25-5].

[8] Hudson has also not shown that the law was clearly established that the Defendants could not deny him a joint hearing before the City Council, the County Board of Supervisors, and the Mayor to discuss his particular grievances. *See, e.g., Bradley v. Bynum*, 618 F. Supp. 3d 353, at 361-62 (S.D. Miss. 2022) (citing *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("To show the law is clearly established, a party must identify a case where an officer acting under similar circumstances . . . was held to have violated" the plaintiff's federal rights.) (internal quotation omitted)).

### b) Right to Free Speech

The parties agree that the City Council meeting is a limited public forum. [27], p. 4; [26], p. 8; [39], p. 10. "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving [its forum] for certain groups or for the discussion of certain topics." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S. Ct. 2093, 150 L. Ed. 2d 151 (2001).

That said, restricting speech in a limited public forum "is not without limits. The restriction must not discriminate against speech on the basis of viewpoint." *Good News Club*, 533 U.S. at 106. Thus, the government may only restrict or regulate speech in a limited public forum "as long as the regulation '(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum.'" *Heaney v. Roberts*, 846 F.3d 795, 801-02 (5th Cir. 2017) (citation and quotations omitted). In a limited public forum, the government may impose reasonable, viewpoint-neutral restrictions on speech to preserve "the civility and decorum" necessary to further the purpose of the meeting. *Ream v. City of Heath*, No. 14–4338, 2015 WL 4393307, at *3 (N.D. Tex. Jul. 16, 2015) (internal quotations omitted). "The determination of whether any restrictions on speech were viewpoint-based turns upon the facts of each case." *See Wenthold v. City of Farmers Branch*, No. 11–748, 2012 WL 467325, at *8 (N.D. Tex. Feb. 14, 2012) (citation omitted). "Viewpoint discrimination exists when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney*, 846 F.3d at 802 (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995)).

### 1)  Constitutional Violation

The questions before this Court, then, are whether Hudson has alleged facts, accepted as true, that show the City and County Defendants violated his First Amendment right to be free from viewpoint discrimination and, if so, whether the right was clearly established. And based on the facts asserted, Hudson has met his burden to avoid dismissal at this early stage of litigation.

At times, Hudson's allegations can be somewhat confusing. However, when viewed in the light most favorable to him and interpreting the pleadings and accompanying exhibits liberally—as the Court does for *pro se* filings—the Court understands his allegations as follows: Hudson attended a City Council meeting where he planned to speak during the Citizens' Forum segment.[9] [25], p. 4; [25-3]. Each speaker at the Citizens' Forum is allotted a specific amount of time to address the City Council, but it is unclear exactly how much time to speak was allocated to Hudson. [25], p. 4; [26], p. 3. Once the Citizens' Forum segment was called to order, the first speaker voiced her opposition to the TIF Loan Hobbs' Automotive Grandview Drive Project, stating that taxpayer money should be invested into fixing the street and the communities. [25-3].

Council President Thaxton then recognized Hudson before the City Council, and Hudson also said he opposed the TIF project. *Id*. Hudson went on to say that the City Council was allowing his community to go down because they were "putting all their efforts into the white community and downtown and throwing black men in jail for a little bit of nothing." *Id*.; *see also* [25-5], p. 1. Hudson further mentioned that there is a need for a fence around the children's playground. [25-3]. Additionally, he said that the cemetery requires a fence, proper lighting, and a camera due to

---

[9] The Court can consider attachments to the Amended Complaint. *See Beroid v. LaFleur*, No. 22-30489, 2023 WL 3034706, at *5 (5th Cir. Apr. 21, 2023) ("on a motion to dismiss, the court is entitled to consider any exhibits attached to the complaint").

ongoing vandalism and damage to headstones, as well as other items that citizens purchased to place at their family members' graves. *Id.* Then suddenly, "Councilman Carmichael and Councilwoman Ellis began yelling to remove [him] from the [City] Council Chambers." [25], p. 4. Hudson explained to Council President Thaxton, that he still had "2 minutes and 50 seconds" remaining to speak under the ordinance, but "Thaxton [] told him that they did not want to hear anything else from him today." *Id.*; *see also* [25-1]. As a result, Hudson left the chambers "shaken, confused, and angry at the actions of Councilm[a]n Carmichael and Councilwoman Ellis who disrupted the meeting." [25], p. 4.

After viewing Hudson's Amended Complaint and accompanying exhibits in the light most favorable to him, he has pled enough to plausibly demonstrate that the alleged interruption during the City Council meeting was to prevent him from further expressing his opinions and perspective regarding the alleged difficulties his community faces pertaining to police and the alleged neglect shown by the City Council in not providing resources to fix other issues. *See Heaney*, 846 F.3d at 802 ("Viewpoint discrimination exists when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."); *see also Biggers v. Massingill*, No. 23-11023, 2025 WL 429974, at *2 (5th Cir. Feb. 7, 2025) ("[Plaintiff] alleged he was silenced by [Defendant]—not because he was disrupting those meetings—but because [Defendant] disagreed with [Plaintiff]'s views . . . That is a textbook violation of the First Amendment."); *Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (noting that "a claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose"); *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) (reviewing First Amendment cases stating basic

principles flowing from the perception that the government may not regulate speech based on its viewpoint or the message it conveys).

Moreover, given that this case is at the motion to dismiss stage, the Court accepts all well pleaded facts as true and "construes [Hudson's Amended] Complaint in the light most favorable to [him]." *See Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018). Also, to reiterate, "[t]he filings of a *pro se* litigant are to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Tucker*, 40 F.4th at 292; *see also Collins*, 77 F.4th at 330 (Courts also liberally construe filings of *pro se* litigants). In sum, the Court finds that Hudson has pled facts sufficient to allege viewpoint discrimination by Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton because they allegedly interrupted Hudson's speech based on his viewpoint. As such, Hudson has pled a constitutional violation.

### 2) Clearly Established

The Court now pivots to decide whether the law was sufficiently clear that a reasonable official would have known that his conduct violated Hudson's constitutional rights. *See Trammell*, 868 F.3d at 339. "To be *clearly established*, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018), *as revised* (Sep. 25, 2018) (citations omitted). "Clearly established law is determined by controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) (quoting *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018)).

"[T]here need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Tucker v. City of Shreveport*, 998 F.3d 165, 173-74 (5th Cir. 2021) (quoting *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (*per curiam*)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

Here, case law reveals that Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton's *alleged* actions violated a clearly established right. The facts here are most closely analogous to *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017), where the Fifth Circuit dismissed a councilman's appeal of a First Amendment claim because there was a material fact issue as to whether there was viewpoint discrimination.[10] There, the plaintiff attended a city council meeting where he was given five minutes to speak. After just three minutes, the plaintiff was interrupted by a councilman. *Id.* at 798-99. The councilman allowed the city council's attorney to speak, and afterward, the plaintiff expressed that he sought to challenge the attorney's opinion. *Id.* Still, the plaintiff was interrupted again by the councilman and the two argued. *Id.* Ultimately, the city council had the plaintiff removed from the city council chambers. *Id.* The district court declined to grant summary judgment in favor of the councilman because the main issue—whether he acted with a bad motive—needed to be decided by a jury. *Id.* at 802 (internal quotations omitted). The

---

[10] The case involved consolidated appeals by multiple parties. The Fifth Circuit dismissed the appeal of the councilman because there was material fact issue as to whether the plaintiff's conduct was viewpoint-based and affirmed the granting of summary judgment in favor of the police officer who removed the plaintiff from the city council meeting. *See Heaney*, 846 F.3d at 802-803.

Fifth Circuit said "[a]ssuming that there was viewpoint discrimination," the district court found that the councilman did violate clearly established law and that the violation was objectively unreasonable. *Id*. The Fifth Circuit also emphasized that a reasonable government official in the councilman's position would have known it was not allowed under the First Amendment to "prevent [the plaintiff] from speaking and to eject him from the meeting based on the message he was conveying." *Id*. Conversely, given the factual question involved, the Fifth Circuit dismissed the appeal of the denial of summary judgment and qualified immunity. *Id*. at 802-803.

Thus, seven years before the events of this case, the Fifth Circuit clearly established that interrupting a person's speech and ejecting him from a city council meeting based on the message he was conveying constitutes viewpoint discrimination. This determination is further bolstered by the Fifth Circuit's finding in *Biggers v. Massingill*, decided on February 7, 2025. Facing similar allegations, the court said that "[u]nlike instances where this court has upheld qualified immunity, [the Plaintiff] squarely alleged that [the Defendant's] invocation of the decorum rule was a mere pretext to silence his views. If proved, that would clearly violate the First Amendment." *Biggers v. Massingill*, No. 23-11023, 2025 WL 429974, at *2 (5th Cir. Feb. 7, 2025); *see also Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003) ("regardless of whether the [] forums, government actors violate a clearly established right if they discriminate on the basis of the views espoused by the speaker.") (citing *Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992)); *Ryan v. Grapevine-Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 WL 2481248, at *7 (N.D. Tex. Mar. 13, 2023) (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 350, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) ("Viewpoint discrimination is a clearly established violation of the First Amendment in any forum.").

Given Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton allegedly interrupted Hudson's speech before the time limit expired, preventing him from further expressing his opinions and perspective regarding the City Council's alleged neglect of his community and their alleged excessive policing of black men in that area, which constitutes viewpoint discrimination—there lies a potential First Amendment violation. Thus, in viewing the Amended Complaint in the light most favorable to the plaintiff, Hudson has plausibly pled viewpoint discrimination because "[a] claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Galvan v. Calhoun Cnty.*, 719 F. App'x 372, 374 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). "Taking well-pled factual allegations as true, the court should then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation and quotations omitted). In light of the Fifth Circuit's decision in *Heaney*, Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton's conduct violated the clearly established law of the Fifth Circuit as of January 23, 2017, and a reasonably competent official would agree that preventing Hudson from speaking because of his viewpoint—violated a clearly established right.

For the reasons stated above, Hudson has pled a First Amendment free speech violation against Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton. All other City and County Defendants are entitled to qualified immunity on Hudson's First Amendment free speech claim because he does not allege any facts demonstrating that those Defendants violated his right to free speech.

### 2. Fourteenth Amendment

Hudson asserts two claims under the Fourteenth Amendment for violating a) his right to procedural due process, and b) his right to equal protection. [25], p. 5. Hudson alleges that the Defendants violated his rights by refusing his demand for a hearing to discuss the relocation of the Blues Festival and the Black Rodeo. For the reasons discussed below, the Court finds that Hudson has not alleged a Fourteenth Amendment violation for either claim and the City and County Defendants are entitled to qualified immunity.

### a) Due Process

The Due Process Clause of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1; *see also Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (it is the deprivation of a constitutionally protected interest without due process of law that is unconstitutional). When conducting a due process analysis, courts must first ask "whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011); *see also Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). "To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). Hudson fails to do so.

Hudson alleges that the Defendants violated his right to procedural due process by refusing his demand for a hearing before the City Council, the County Board of Supervisors, and the Mayor

to discuss the relocation of the Blues Festival and the Black Rodeo. [25], p. 5. But nowhere in his Amended Complaint does he allege whether he has a liberty or property interest in anything that would require a hearing. Nor does he allege that he has a liberty or property interest in the Blues Festival or Black Rodeo, such as contracts associated with these events, or that he had any land use permits impacted by the relocations.

To be sure, courts have found no liberty or property interest involved with similar allegations. *See, e.g., Parker Ave., L.P. v. City of Philadelphia*, No. CIV.A. 13-121, 2013 WL 1742498, at *3 (E.D. Pa. Apr. 23, 2013) ("Plaintiff complains it has not been given a hearing before the city council in connection with its failure to pass an ordinance plaintiff favors. Plaintiff simply has no property interest and thus no procedural due process right to be heard in that forum. . ."); *Kendrick v. City Council of Augusta, Ga.*, 516 F. Supp. 1134, 1139 (S.D. Ga. 1981) ("even if the city council had not acted within the bounds of its discretionary authority, such a breach would not, by itself, amount to a deprivation of a protected property interest, since plaintiff has no property interest in the city council procedure"); *see, e.g., Nichols v. Univ. of S. Mississippi*, 669 F. Supp. 2d 684, 700 (S.D. Miss. 2009) (finding no property interest in a hearing under the University's policies and the plaintiff did not have liberty interest that mandated a name clearing hearing); *see also Gordon v. Turner*, No. CIV A 505-cv-234-MTP, 2007 WL 528729, at *1 (S.D. Miss. Feb. 14, 2007) (plaintiff does not have a federally protected liberty interest in having these grievances resolved to his satisfaction).

For all of these reasons, Hudson cannot state a procedural due process claim against the County and City Defendants. *See Hurtt v. Town of Hope Mills*, No. 5:21-cv-348-FL, 2022 WL 2032287, at *4 & 7 (E.D.N.C. June 6, 2022) ("plaintiff's due process claim fails as a matter of law

because plaintiff fails to allege the deprivation of a property or liberty interest"); *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) (requiring a showing of a property right as a basis for a procedural due process violation); *see also Los Alamitos Med. Ctr., Inc. v. Loc. Initiative Health Auth. for Los Angeles,* 680 F. Supp. 3d 1169, 1177 (C.D. Cal. 2023) ("Amended Complaint does not sufficiently allege a property interest, it fails to plead a procedural due process violation.").

The City and County Defendants are therefore entitled to qualified immunity from Hudson's Fourteenth Amendment procedural due process claim.

### b) Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying to any person within its jurisdiction the equal protection of the laws." *United States v. Ramos*, 858 F. App'x 759 (5th Cir. 2021) (citation omitted). "This Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (citations and quotations omitted). "To prevail on his equal protection claim, [Hudson] must allege and prove that he received treatment different from similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Runnels v. Banks*, No. 5:11-cv-13-RHW, 2012 WL 2839802, at *2 (S.D. Miss. Jul. 10, 2012) (citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

Hudson's equal protection allegations are unclear, as he asserts that because he was not given a hearing, the "Defendants violated [his] Fourteenth Amendment to the Constitution, Procedural Due Process and equal protection under the law." [25], p. 5. Hudson then quotes the Fourteenth Amendment in his Amended Complaint. In his Response brief, but not in his Amended

Complaint, Hudson claims the City Council discriminated against him by granting other citizens hearings while ignoring his demands, relying on the "Chicken hearing" and the "Airbnb hearing" as examples. [41], p. 3. He provides no further explanation about the Chicken hearing and the Airbnb hearing, the circumstances surrounding them, or even if these two hearings ultimately even occurred at all.

Hudson has not alleged that he is a member of a protected class, or that he was discriminated against by the Defendants based on his race, national origin, or alienage. *See Runnels v. Banks*, No. 5:11-cv-13-RHW, 2012 WL 2839802, at *2 (S.D. Miss. Jul. 10, 2012) ("To prevail on his equal protection claim, [Hudson] must allege and prove that he received treatment different from similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."). And absent any allegations showing unequal treatment or discriminatory intent, Hudson has failed to carry his burden. In sum, Hudson has failed to allege an equal protection violation. *See F.B. by & through Bono v. Francis Howell Sch. Dist.*, No. 4:22-cv-00503-JAR, 2024 WL 2208217, at *7 (E.D. Mo. May 16, 2024) (motion to dismiss is granted as to Plaintiff's equal protection violation allegations because Plaintiff "made very few allegations relating to his equal protection claim, and when he did, he allege[d] vague facts and legal conclusions."); *Moreno v. Donna Indep. Sch. Dist.*, No. 7:12-cv-141, 2013 WL 12099971, at *3 (S.D. Tex. Mar. 1, 2013), *aff'd*, 589 F. App'x 677 (5th Cir. 2014) (holding that the Plaintiff failed to state a valid equal protection claim).

For the reasons stated above, the City and County Defendants are entitled to qualified immunity from Hudson's Fourteenth Amendment equal protection claim.

## B. Federal claims against Defendants Travelers and FCC

Generally, "constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619, 111 S.

Ct. 2077, 114 L. Ed. 2d 660 (1991). In order to state a constitutional claim for relief under Section 1983, Hudson must allege a violation of a constitutional right and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute ordinance, regulation, custom, or usage, of any State o[r] Territory or the District of Columbia." 42 U.S.C. § 1983.

The Defendants Travelers and FCC, as insurance companies, are private entities. *See* [25], p. 1. And the Supreme Court has held that insurance companies, even when processing claims under state statutory regimes, are not considered state actors or to be acting under color of state law, and thus may not be sued under Section 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-58, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). Thus, while mindful of the duty to construe *pro se* actions liberally, the Court has analyzed the Amended Complaint and finds that Hudson fails to state a claim on which relief may be granted against Travelers and FCC. For the reasons stated above, Hudson's federal claims asserted against Travelers and FCC are dismissed.

## C.  State-law claims against all Defendants

In his Amended Complaint, Hudson also asserts claims arising under Mississippi state law for violations under Mississippi Constitution Article 3, breach of public bond, breach of contract, and intentional infliction of emotional distress. [25], pps. 5-6.

### 1.  Mississippi constitutional claims

Hudson alleges that the Defendants violated Article 3, Sections 11, 13, and 14 of the Mississippi Constitution when they restricted his speech and denied him his right to petition and

right to procedural due process.[11] After careful review of Hudson's Amended Complaint, his state-law constitutional claims and arguments are identical to his federal constitutional claims. Hudson and the Defendants do not argue that the claims should be treated differently under the text of the Mississippi Constitution or pursuant to the original public meaning of these provisions.

The Court has already analyzed Hudson's right to petition claim, right to free speech claim, and his procedural due process claim in the context of the United States Constitution, and the arguments asserted by Hudson under the Mississippi State Constitution are no different than those asserted under the United States Constitution. Thus, for the same reasons discussed above under the federal constitutional analysis, the Court dismisses Hudson's state law right to petition and procedural due process claims. *See, e.g., A & T Express, LLC v. Town of Prentiss*, No. 2:23-cv-85-HSO-BWR, 2024 WL 4104287, at *9 (S.D. Miss. Sep. 6, 2024) ("Mississippi Constitutional claims should be considered together with its federal claims, [] the Court finds that Plaintiff's substantive due process claim under the Mississippi Due Process Clause should likewise be dismissed for the reasons discussed in Part II" which is the Court's analysis of the Federal constitutional claims); *see also In re Validation of Up to $27,600,000 Tr. Certificates Evidencing Proportional Ints. in a Lease by Simpson Cnty. Sch. Dist.*, 400 So. 3d 381, 398 (Miss. 2024) (due-process guarantees under the Mississippi Constitution are generally regarded as essentially identical to the federal guarantee under the Fourteenth Amendment); *see also James v. Thompson*, 356 So. 3d 86, 90 (Miss. 2022) (conduct was protected under the First Amendment of the United States Constitution and article

---

[11] "The right of the people peaceably to assemble and petition the government on any subject shall never be impaired." Miss. Const. Art. 3, § 11. "The freedom of speech and of the press shall be held sacred; and in all prosecutions for libel the truth may be given in evidence, and the jury shall determine the law and the facts under the direction of the court; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted." Miss. Const. Art. 3, § 13. "No person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. Art. 3, § 14.

3, section 13, of the Mississippi Constitution); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (affirming dismissal of the state-law claims where state constitutional claims mirror federal claims under Section 1983 and Mississippi courts have generally held the same).

As a result, Hudson's state law claim for free speech violation remains against Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton. However, Hudson's state law right to petition, right to free speech, and right to due process claims are dismissed against all other Defendants because he has not alleged sufficient facts showing that such Defendants violated his rights.

### 2. Breach of public official bond

Hudson brings a statutory cause of action under Mississippi Code Annotated section 25-1-45. He asserts that the City Council, the Mayor, and the County Board of Supervisors "breached their Public Official Bonds" by not giving him a hearing. [25], pps. 5-6. To support his contention, he claims that they ignored their ministerial duty. *Id*. at 5. The Defendants assert that they have not breached their duties of office and that the Mississippi Tort Claims Act bars Hudson's claim.

"Mississippi Code § 25-1-45 allows interested persons to file suit where it can be shown that a bonded public official knowingly or wil[l]fully fail[ed], neglect[ed], or refuse[d] to perform any duty required of him by law or . . . violate[d] his official obligations in any respect . . ." *Mississippi v. Rinehart*, No. 115-cv-00077-GHD-DAS, 2016 WL 4703516, at *10 (N.D. Miss. Sep. 7, 2016) (citation and quotations omitted). Section 25–1–45 provides:

> If any county, county district, or municipal officer who has executed [a] bond for the faithful performance of duty shall knowingly or wilfully fail, neglect, or refuse to perform any duty required of him by law or shall violate his official obligations in any respect, the president or, in the absence or disability or default of the president, the vice-president of the board of supervisors in case of a county or county district officer, and the mayor in case of a municipal officer, or any person interested in

either case shall cause suit to be brought on the bond of such officer for the recovery
of the damages that may have been sustained thereby.

*Short v. Williams*, 303 So. 3d 87, 103 (Miss. Ct. App. 2020). "A ministerial duty is a duty that is

positively designated by statute, ordinance, or regulation." *J.D. by & Through Mingo v. McComb Sch.*

*Dist.*, 347 So. 3d 199, 203 (Miss. Ct. App. 2022).

Hudson alleges that the City Council, the Mayor, and the County Board of Supervisors

"ignored [their] ministerial duty[.]" [25], pps. 5. He also alleges that the City Council, the Mayor,

and the County Board of Supervisors "breached their Public Official Bond" when they refused to

give him a hearing. *Id*. at 5-6. In his Amended Complaint, Hudson appears to base his breach of

bond claim on being denied a hearing to petition the government. *See* [25], pps. 5-6, ¶ 14 ("breached

their Public Official Bond, allowing Plaintiff to bring suit according to Miss Code Ann 25-1-45").

And, as analyzed above under Hudson's First Amendment right to petition the government claim,

the Court has already found no violation of Hudson's First Amendment right to petition the

government for a redress of grievances. Regarding his assertion that a ministerial duty was ignored,

Hudson has provided no authority saying that the Defendants have a mandatory duty to give him a

hearing and the Court is unaware of any. Further, the decision of whether to have a hearing appears

to be discretionary and not a ministerial duty because there is an element of choice or judgment

involved in granting a hearing. *See, e.g., Short*, 303 So. 3d at 103 ("There is no element of choice or

judgment. Therefore, the duty is ministerial[,]" and a ministerial duty is a duty that is positively

designated by statute, ordinance, or regulation).

Conversely, Hudson has failed to state a claim under Mississippi Code § 25-1-45 because

he has not shown that the Defendants knowingly or willfully failed, neglected, or refused to perform

any duty required of him by law or violated their official obligations in any respect regarding denying

his request for a joint hearing. *See Short*, 303 So. 3d at 103 (plaintiff failed to plead a separate cause of action under Mississippi Code Annotated section 25-1-45 because the statute allows suits on an official's bond "only if he fails to perform a mandatory duty.").

For the reasons stated above, Hudson's claim for breach of bond is dismissed.

### 3. Breach of contract

To establish a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid and binding contract between it and [defendant], (2) that [defendant] breached the contract to which it was a party, and (3) that [plaintiff] was damaged monetarily." *United Plumbing & Heating Co. v. AmSouth Bank*, 30 So. 3d 343, 347 (Miss. Ct. App. 2009) (citation omitted). Hudson alleges that the Defendants breached their "Public Official Bond/Contract with FCC[] Insurance Group and Travelers." [25], p. 6. He does not allege that he is a party to such a contract. And absent an allegation showing that Hudson is a party to the contract, he has failed to state a claim for which relief can be granted. *See Hammonds v. Lennep*, No. CIV.A 109-cv-642LGRHW, 2009 WL 3418546, at *2 (S.D. Miss. Oct. 20, 2009) (dismissing breach of contract claim where "there is no evidence . . . that [defendant] was a party to [contract]"); *Elam v. Pharmedium Healthcare Corp.*, No. CIV.A.2:07-cv-212-P-A, 2008 WL 1818436, at *2 (N.D. Miss. Apr. 18, 2008) (dismissing breach of contract claim where defendant not party to contract). Consequently, Hudson's breach of contract claim is dismissed.

### 4. Intentional infliction of emotional distress

A claim for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So.

3d 971, 980 (Miss. 2013). Thus, to state a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the "defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant." *Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170 (Miss. Ct. App. 2021) (internal citations omitted). As a result, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Montgomery*, 955 F. Supp. 2d at 653 (citation omitted).

Hudson's allegations do not show that the Defendants engaged in conduct necessary for a claim of intentional infliction of emotional distress. He has not provided any specific facts indicating that the Defendants' actions were such that they would "evoke outrage or revulsion in civilized society[.]" *Pointer*, 327 So. 3d at 170. Importantly, he appears to base this claim on being denied a hearing to petition the government and not on being cut off at the City Council meeting. *See* [25], pps. 6, ¶ 15 ("By refusing to allow Plaintiff a hearing the Laurel Council and County Board of Supervisors cause a deprivation of the feeling of unjust treatment (Indignant) further causing Plaintiff Mental Anguish."). Hudson also alleges that their "behavior was and still is malicious, intentional, and outrageous[.]" [25], p. 6. Based on his allegations, Hudson's claim that the City Council and the County Board of Supervisors caused him mental anguish by denying his request for a joint hearing hardly meets the threshold required. *See Montgomery*, 955 F. Supp. 2d at 653 ("meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in

Mississippi."); *Orr v. Morgan*, 230 So. 3d 368, 376 (Miss. Ct. App. 2017) (explaining that "Mississippi's standard for a claim of intentional infliction of emotional distress is very high," and finding that even when defendants may have acted with malice, such conduct nevertheless does not rise to the level required to support a finding of intentional infliction of emotional distress). Additionally, Hudson's allegations are merely conclusory and fail to allege facts that demonstrate in what manner the Defendants affirmatively acted to cause mental injury and damages. *See Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will suffice to prevent a motion to dismiss.") (citations omitted); *see also King v. Latham*, No. 2:24-cv-169-KS-MTP, 2025 WL 978405, at *4 (S.D. Miss. Apr. 1, 2025) (granting the motion to dismiss where plaintiff's IIED allegations were conclusory).

Even if Hudson had based his intentional infliction of emotional distress on his alleged First Amendment free speech violation, such would still not amount to conduct that would "evoke outrage or revulsion in civilized society[.]" *Pointer*, 327 So. 3d at 170. Hudson says he was "shaken, confused, and angry at the actions of Councilmen Carmichael and Councilwoman Ellis who disrupted the meeting." [25], p. 4. Hudson has complained on numerous occasions to the Defendants, but simply because he was not given his entire allotted time at one particular City Council meeting does not itself rise to be so "outrageous and extreme in character as to be intolerable in a civilized society." *See Beauchene v. Mississippi Coll.*, 986 F. Supp. 2d 755, 765 (S.D. Miss. 2013). For the reasons stated above, Hudson's claim is therefore dismissed for failure to state a claim.

### III. MOTION FOR RELIEF ON CLERK'S DENIAL OF DEFAULT JUDGMENT

Rule 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60; *see, e.g., Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 668 (5th Cir. 1986) ("Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another.") (citation omitted). In Hudson's Motion for Relief [34] on Clerk's Denial of Default Judgment, he contends that he is entitled to a clerk's entry of default against the City Defendants because their response was untimely. But the record reveals that Hudson's Amended Complaint [25] was filed on April 29, 2024, and the City Defendants timely answered on May 13, 2024. To be sure, computing deadlines under Rule 6 of the Federal Rules of Civil Procedure states that:

> "[w]hen the period [of time] is stated in days or a longer unit of time, the Rule instructs that the day of the event that triggers the period should be excluded; that every day should be counted, including intermediate Saturdays, Sundays, and legal holidays[;] and that the last day of the time period should be included unless the last day is a Saturday, Sunday or legal holiday in which case the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

*Brookins v. State Farm Mut. Auto. Ins. Co.*, No. 3:20-cv-351-HTW-LGI, 2021 WL 1233474, at *2 (S.D. Miss. Mar. 31, 2021). After considering Rule 6 and the relevant portions of the record, the Court finds that the City Defendants timely answered. Having found no clerical or other similar mistake, Hudson's Motion for Relief [34] on Clerk's Denial of Default Judgment is denied.[12]

---

[12] Hudson's "Motion to Supplement the Record and Request for Summary Judgment on the Pleadings" [42] is confusingly styled. In light of Hudson's *pro se* status, the Court interprets his Motion [42] as a Motion for Judgment on the Pleadings, given the relief he has requested. *See* [42], p. 2 ("Enter Judgment on the pleadings in favor of Plaintiff"). In considering his Motion [42], the Court denies such because of its conclusory nature. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Hudson's Motion is two pages long and contains very few facts, most of which are conclusory in nature. The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation

# IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss [26] is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to the First Amendment free speech claim and the Mississippi state law free speech claim asserted against Councilman Carmichael, Councilwoman Ellis, and Councilman Thaxton. The Motion is GRANTED as to all other Defendants on all claims, which are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Judgment on the Pleadings [38] is GRANTED. All claims against such Defendants are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that Hudson's Motion for Relief [34] on Clerk's Denial of Default Judgment is DENIED.

---

omitted); *see also Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) ("[A] judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.").

Even if the Court were to interpret Hudson's Motion [42] as a motion brought under Federal Rule of Civil Procedure 56, it would also be denied because it is conclusory and premature. This is due to the lack of factual evidence discussed in the Motion and the fact that no discovery has taken place as a result of the Defendants' claim of qualified immunity in response to Hudson's allegations. *See, e.g., Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) (even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to put that evidence properly before the court); *see also Whitfield v. Mississippi Bureau of Narcotics*, No. 3:17-cv-987-HSO-JCG, 2019 WL 6534144, at *4 (S.D. Miss. Dec. 4, 2019) ("Because neither party has had adequate time to complete discovery, Plaintiff's Motion [] for Summary Judgment should be denied without prejudice as premature."); *Gooden v. Jackson Public Schools*, No. 3:12-cv-798, 2013 WL 1704016, at *2 (S.D. Miss. Apr. 19, 2013) (denying summary judgment as premature because plaintiff had not had the opportunity to engage in discovery).

Hudson's request to supplement the record is denied because the documents subject to the Motion to Supplement are not referenced in his Amended Complaint and the documents do not appear to be central to Hudson's claims. *See, e.g., Abolaji v. St. Vrain Sch. Dist.*, No. 1:23-cv-02740-GPG-SBP, 2025 WL 552356, at *2-3 (D. Colo. Feb. 19, 2025), *report and recommendation adopted sub nom. Oluwanisola Abolaji, Plaintiff, v. ST. Vrain School District, Brandy Melendy, Ronald Melendy, & Teri Doehring, Defendants.*, No. 1:23-cv-02740-GPG-SBP, 2025 WL 1568147 (D. Colo. Mar. 18, 2025) (denying motion to supplement). And for the same reasons as stated above, Hudson's remaining relief requested is also denied.

IT IS FURTHER ORDERED AND ADJUDGED that Hudson's "Motion to Supplement the Record and Request for Summary Judgment on the Pleadings" [42] is DENIED.

This, the 23rd day of June, 2025.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE