IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ANTHONY HUDSON**                                                                             **PLAINTIFF**

**v.**                                               **CIVIL ACTION NO. 2:23-cv-197-TBM-RPM**

**TRAVELERS CASUALTY
AND SURETY COMPANY
OF AMERICA,** *et al.*                                                         **DEFENDANTS**

## ORDER DENYING RULE 54(b) MOTION

*Pro se* Plaintiff Anthony Hudson sued local and county officials and their insurance carriers for various federal and state violations arising from his attempts to express his grievances about the relocation of two local events. The Court dismissed all but one of his claims. He now asks the Court to reconsider its prior order. In his motion, which is just over one page in length, Hudson argues that the Court erred as a matter of law and fact by overlooking a local ordinance and Mississippi statute. The Court did not do so. In addition to procedural shortfalls, Hudson's arguments misinterpret the Court's rulings. The Court considered the legal authority but dismissed his claims for unrelated legal and factual deficiencies. Hudson's motion for reconsideration [50] is denied.

### I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Laurel historically hosted the Mother's Day Blues Festival and Black Rodeo. [25], pps. 2-3. According to Hudson, a Laurel resident, the Fair Commissioners were engaging in "discriminatory actions" to relocate both events to Hattiesburg, Mississippi. *Id.* Seeking to voice his grievances, Hudson sent a demand letter for a hearing with the Laurel City Council, the Jones County Board of Supervisors, and the Mayor of Laurel. *Id.* at p. 2. In response, Hudson claims, they "all agreed to verbally tell Mr. Hudson that the Fairground Commissioners were a separate

governmental entity and that the Council and County had no control of their actions." *Id.* at p. 3. The Fairground Commissioner's executive director learned about Hudson's request, and she offered to put him on the agenda. [41], p. 2. Hudson declined. *Id.* Still, Hudson attended multiple "Citizens' Forum" meetings where he reminded the city council of his request and, eventually, accused them of "violat[ing] their Oath of Office" by denying him a hearing. [25], p. 3. And, at one of these meetings, three of the City Defendants allegedly interrupted Hudson during his allotted speaking time. *Id.*

Hudson then sued the City Defendants[1], County Defendants[2], and their insurance carriers for violating the First Amendment's Free Speech and Petition clauses, the Fourteenth Amendment's Due Process and Equal Protection clauses, and Mississippi statutes and common law. After Hudson amended his complaint [25], the City Defendants and their insurance carrier moved to dismiss, asserting qualified immunity [26]. The County Defendants and their insurance carrier responded to Hudson's complaint [29] before moving for judgment on the pleadings, also asserting qualified immunity [38].[3] Despite accepting Hudson's allegations as true, the Court dismissed all of Hudson's claims except for his free speech claim against the three City Defendants who allegedly interrupted him during the city council meeting. *See Hudson v. Travelers Cas. & Sur. Co. of Am.*, No. 2:23-CV-197-TBM-RPM, 2025 WL 1737808, at *15 (S.D. Miss. June 23, 2025). Three days later, Hudson filed a motion for reconsideration. [50].

---

[1] The City Defendants include Councilwoman Grace Amos, Councilman Anthony Thaxton, Councilwoman Shirley Keys Jordan, Councilman George A. Carmichael, Councilwoman Andrea Ellis, Councilman Jason Capers, Councilman James K. Kelly, and Mayor Johnny Magee.

[2] The County Defendants include County Supervisor Travares Comegy, County Supervisor Larry Dykes, County Supervisor Phil Dickerson, County Supervisor David Scrugg, and County Supervisor John Burnett.

[3] The City Defendants and their insurance carrier joined [40] the motion for judgment on the pleadings.

## II. STANDARD OF REVIEW

"The Federal Rules of Civil Procedure do not expressly authorize motions for reconsideration." *Pace v. Cirrus Design Corp.*, No. 3:22-CV-685-KHJ-MTP, 2025 WL 1474820, at *1 (S.D. Miss. May 22, 2025). But federal courts routinely apply one of three procedural rules depending on the nature of the order at issue. Rules 59(e) and 60(b) govern judgments or otherwise final rulings. *See* FED. R. CIV. P. 59(e) (applying to "final judgment"); FED. R. CIV. P. 60(b) (applying to "final judgment, order, or proceeding"); *see also Pace*, 2025 WL 1474820, at *1 ("If the motion is filed within the time prescribed for filing a Rule 59(e) motion—28 days after the judgment or order of which the party complains—it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion.") (citation modified) (quoting *Cavalier v. Jill L. Craft Att'y at L., L.L.C.*, No. 23-30778, 2024 WL 2846059, at *2 (5th Cir. June 5, 2024) (per curiam)).

Rule 54(b), on the other hand, permits parties "to seek reconsideration of interlocutory orders," i.e., non-final orders. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). An order is final "when it ends the litigation and leaves nothing for the court to do but execute the judgment." *Elizondo v. Green*, 671 F.3d 506, 509 (5th Cir. 2012); *see* FED. R. CIV. P. 54(a) (defining judgment as "any order from which an appeal lies").

Hudson improperly, but understandably, seeks reconsideration under Federal Rule of Civil Procedure 59(e). This is because the Court has not entered judgment against any defendants. *See* FED. R. CIV. P. 58(a). And the order at issue was not final for appeal purposes for two reasons. First, a "dismissal of claims against some, but not all, defendants is not a final appealable judgment" absent specific findings which the Court did not make. *Elizondo*, 671 F.3d at 509. Second, an order *granting* qualified immunity is not immediately appealable under the collateral

3

order doctrine, unlike an order *denying* qualified immunity. *Id.* Hudson therefore seeks reconsideration of an order that did not act as a final judgment, order, or proceeding. Hudson's free speech claim survived against three defendants, and he obviously requests only that the Court reconsider whether the dismissed defendants are entitled to qualified immunity.

Accordingly, the Court must analyze Hudson's motion under Rule 54(b). *See Cabral v. Brennan,* 853 F.3d 763, 766 (5th Cir. 2017) ("Because the order granting partial summary judgment was interlocutory, the court should have analyzed the motion for reconsideration under Rule 54(b) instead of Rule 59(e) . . . ."). Rule 54(b) authorizes a court to revise a non-final order "'at any time' before final judgment." *Williams v. Seidenbach*, 958 F.3d 341, 346 (5th Cir. 2020) (quoting FED. R. CIV. P. 54(b)). It may do so "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of substantive law." *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994).

### III.  ANALYSIS

Construing his *pro se* motion liberally, as the Court is required, *see Collins v. Dall. Leadership Found.*, 77 F. 4th 327, 330 (5th Cir. 2023), Hudson primarily argues that the Court erred by dismissing his claims under the First Amendment's Petition Clause, Mississippi Code Section 25-1-45, and Mississippi common law.

**A. First Amendment Right to Petition Claim**

In his amended complaint, Hudson alleged that the City and County Defendants violated his right to petition the government under the First Amendment because they refused to give him a hearing. *Hudson*, 2025 WL 1737808, at *5. The Court analyzed and rejected two interpretations

of Hudson's allegations. To the extent he sought a joint hearing between both the City and County Defendants at the same time, the Court rejected the argument because "he provided no legal authority showing such entitlement and the Court [was] unaware of any." *Id*. If Hudson sought to petition each group separately, however, the Court also held that he failed to allege "that he was prevented from petitioning such groups." *Id.*[4]

Hudson claims that the Court erred by overlooking Exhibit 10. [50], p. 1. Exhibit 10 contained a city ordinance that outlined the policies and procedures for the Laurel Citizens' Forum. [41-10]. Hudson attached the ordinance to his brief in response to the motion for judgment on the pleadings. In his motion for reconsideration, Hudson claims:

> [He] submitted Exhibit 10, to not only prove [the] denial of a hearing but also to point out that the City Defendant did not perform their duties [under the ordinance]. It was both Defendants duty to send Plaintiff a denial letter, with the reason of denial, giving him the ability to continue the legal process by filing an Appeal . . . .

[50], p. 1.[5] The Court disagrees; it did not overlook the ordinance. Instead, it implicitly recognized that the ordinance had no bearing on its rationale for dismissing his claims.

---

[4] The Court also held that Hudson did not show "that the law was clearly established that the Defendants could not deny him a joint hearing. *Id*. at 5 n.8. Aside from conclusory statements, Hudson's motion for reconsideration does not address this portion of the Court's holding. It therefore fails for this reason too. *See Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("To show the law is clearly established, a party must identify a case where an officer acting under similar circumstances . . . was held to have violated" the plaintiff's federal rights) (internal quotation omitted).

[5] Though this argument somewhat sounds in procedural due process terms, Hudson's motion explicitly takes issue and quotes "paragraph 2 on page 9" of the Court's order, [50], p. 1, where the Court analyzed his First Amendment right to petition claim. Hudson does say the terms due process and equal protection in a conclusory sentence at the end of his motion. *See id*. at p. 2 (claiming the defendants "den[ied] Hudson due [p]rocess and further play[ed] into viewpoint discrimination"). To the extent that Hudson seeks to raise this same ground under his due process and equal protection claims, the Court finds that Hudson waived such arguments by failing to cite any authority or otherwise engage with the Court's analysis. *See McIntosh v. Partridge*, 540 F.3d 315, 325 n.12 (5th Cir. 2008) (affirming district court's finding that equal protection claim occasionally mentioned alongside due process claim was waived); *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) (holding defendant waived argument by only mentioning it in "conclusory sentences tacked to the end of paragraphs").

The ordinance does not contradict the Court's rationale for dismissing Hudson's First Amendment right to petition claim under either interpretation. Assuming Hudson sought a joint hearing—the Court's first interpretation—his claim failed. The Court acknowledged that Hudson requested, and never received, a joint hearing between both the City and County Defendants at the same time. *See Hudson*, 2025 WL 1737808, at *5. But even if this constituted an injury, the Court reasoned, Hudson did not prove that it was one protected by law. *Id.* And the ordinance does not suggest otherwise. Hudson was not requesting to be placed on the City Council's agenda during a Citizens' Forum. Rather, he was requesting a personal, collective hearing with all the City and County Defendants. To the extent such a hearing exists, the ordinance does not govern it and, therefore, does not supply the required legal authority for Hudson's claim to survive.

Alternatively, if Hudson sought to petition the defendants separately—the Court's second interpretation—his claim also failed. The legal standard, as the Court noted, recognizes that "any deliberate impediment to access, even delay of access, may constitute a constitutional deprivation." *Id.* But, the Court reasoned, Hudson did not allege that he was prevented from petitioning these groups. *Id.* On the contrary, the Court noted that he declined an invitation to be on the Fair Commissioners' agenda, *id.*, and had "sent emails, a letter, and spoke to the City

---

Relatedly, Hudson's failure to adequately brief these arguments plays into the overall convoluted nature of his disagreement. The Court's best guess is that Hudson may be claiming a procedural right to a written denial letter. A written letter, Hudson further claims, is necessary to appeal the denial under MISS. CODE ANN. Section 11-51-75. Though Hudson has never cited this language before, the ordinance does provide that any Laurel citizen may "submit a written and signed request to the Council Clerk or Council President" to be placed on the agenda for a citizens' hearing. [41-10], p. 2. It goes on to state that the citizen "shall be informed no later than 5:00 p.m. on the Friday preceding the Council meeting if the request has been approved or denied and the for [*sic*] denial." *Id.* at p. 3. Even if the ordinance did establish a procedural right to notice of a denial, Hudson was not deprived of it. Despite making many requests for a hearing, Hudson reduced only one to writing. And, as he acknowledges, the County and City Defendants responded to his written request, "verbally" telling him that they "had no control" over the Fairground Commissioners. *See* [25], pps. 2-3. Notwithstanding the fact that the ordinance governs only the City Defendants, the defendants' verbal response satisfied any obligations imposed by the ordinance because its writing requirement applies to the citizen's request, not the Council's notice and reason for denying it. Finally, to the extent it applies, Section 11-51-75 does not appear to require a citizen to produce the written denial letter for appeal purposes either.

Council on several occasions," *id.* at 5 n.7. These facts demonstrate continued access, not a denial of it. The ordinance does not contradict this conclusion either. To prevail under this interpretation, Hudson needed to point out overlooked facts suggesting that "he was barred from the City Council meetings, other governmental meetings, or prevented from speaking to the various governmental officials about his concerns." *Id.* at 5. Since the ordinance fails to supply such allegations, the Court maintains its alternative analysis as well.

The Court acknowledges that it did not explicitly mention the ordinance in either analysis. But the Court did not overlook it. Rather, the Court ruled against both interpretations upon grounds that the ordinance bore little, if any, relevance. The Court thus did not err by dismissing Hudson's First Amendment right to petition claim.

**B. Statutory Breach of Public Official Bond and Common Law Breach of Contract Claims**

In his amended complaint, Hudson claimed that, by denying his request for a hearing, the City and County Defendants "breach[ed] their Public Official Bond[s]" under Mississippi Code Section 25-1-45[6] and insurance contracts under Mississippi common law. *Id.* at 12. The Court held that Hudson's allegations did not state a claim for relief under either cause of action. The Court dismissed the statutory claim because, as alleged, the defendants did not deny Hudson a mandatory hearing. *See id.* at 11-13. And the Court dismissed his common-law breach of contract claim because Hudson did not allege that he was a party to the insurance contracts. *Id.* at 13. For the first time in his reply brief, Hudson seeks reconsideration of his claims because Section 25-1-45 "informs the

---

[6] "Mississippi Code § 25-1-45 allows interested persons to file suit where it can be shown that a bonded public official knowingly or wil[l]fully fail[ed], neglect[ed], or refuse[d] to perform any duty required of him by law or . . . violate[d] his official obligations in any respect . . . ." *Id.* at 12 (quoting *Mississippi v. Rinehart*, No. 115-cv-00077-GHD-DAS, 2016 WL 4703516, at *10 (N.D. Miss. Sep. 7, 2016)).

7

[C]ourt that Plaintiff can bring suit on the bond of each official making him a party to that bond." [57], p. 3.[7]

Hudson's argument, however, misinterprets the Court's opinion. His argument relies on a mistaken premise: the Court dismissed his "breach of Public Official Performance" claim—presumably referring to his statutory cause of action under Section 25-1-45—because he "did not plead that he was a party to the County Supervisors and City Council performance bonds." [57], p. 3. The Court did not do so. In fact, the Court recognized in its "Breach of public official bond" analysis that Section 25-1-45 does permit "interested persons," including ones not party to a contract, to sue bonded public officials for enumerated violations. *Hudson*, 2025 WL 1737808, at *11-13. Rather, Hudson's statutory claim failed, in part, because he did not allege that the defendants had a mandatory duty to grant his request for a hearing. *Id.* at 12; *see Short v. Williams*, 303 So. 3d 87, 103 (Miss. Ct. App. 2020) (plaintiff failed to plead a separate cause of action under Mississippi Code Annotated section 25-1-45 because the statute allows suits on an official's

---

[7] As an initial matter, Hudson forfeited this argument by not addressing it in his first brief. "Arguments raised for the first time in a reply brief, even by pro se litigants such as [Hudson], are [forfeited]." *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005); *accord Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010); *see also Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.1, 138 S. Ct. 13, 199 L. Ed. 2d 249 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. 'Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right.'") (quoting *United States v. Olano*, 507 U.S. 725, 733, 133 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). Otherwise, the Court's consideration of such arguments risks prejudicing the non-moving party. *McDaniel v. Miss. Baptist Med. Ctr.,* 869 F. Supp. 445, 453 (S.D. Miss. 1994) ("In the interest of fairness, Defendant should not be allowed to raise new grounds for the first time in its rebuttal to which Plaintiff will not have the opportunity to provide an adequate response."). Nevertheless, the Court will consider the merits of Hudson's argument despite this procedural deficiency.

The Court will not, however, consider the merits of other new arguments that Hudson briefly and haphazardly alludes to for the first time in his reply brief. For example, he suggests that the ordinance is unconstitutionally vague, *see* [57], pps. 1-2, that the defendants "intentionally concealed" portions of the ordinance, *see id.* at p. 2, and requests the Court to revisit nearly all of its rulings in a conclusory fashion, *see id.* at pps. 4-6. While these too are technically forfeited, Hudson's inadequate briefing leaves the Court with little ability to undertake a merits analysis. For this reason, these arguments are waived. *See supra* note 5.

bond "only if he fails to perform a mandatory duty"). Section 25-1-45 does not provide this missing predicate; it requires it. The Court therefore maintains its dismissal of Hudson's statutory claim.

To the extent Hudson seeks reconsideration of his common law breach of contract claim, Section 25-1-45 is of no help either. Hudson's argument conflates the allegations required to assert a claim under both causes of action. For example, as noted above, Section 25-1-45's "interested person" standard does not require contractual privity. But this more lenient standard does not apply to general breach of contract actions under Mississippi law. For that avenue of relief, as the Court noted in its "Breach of contract" analysis, Mississippi law requires privity of contract between the litigants. *See Hudson*, 2025 WL 1737808, at *13. Therefore, contrary to Hudson's argument, Mississippi common law does not consider him a "party" to the public bond simply because Section 25-1-45 provided him with a potential separate cause of action on the same alleged facts.

The Court maintains its dismissal of Hudson's Section 25-1-45 and breach of contract claims. The Court did not err by overlooking Hudson's reference to Section 25-1-45. Rather, it implicitly recognized the two causes of action called for different allegations and analyzed them accordingly.

## IV. CONCLUSION

While the Court understands Hudson's disappointment, its dismissal of his claims was consistent with the law and the record. The Court did not err by overlooking any evidence or legal authority that Hudson put forward. As a result, the Court does not see any reason to revise any aspect of its order.

9

IT IS THEREFORE ORDERED AND ADJUDGED that Anthony Hudson's Rule 54(b) Motion for Reconsideration [50] is DENIED.

This, the 26th day of January, 2026.

                                                                                _____
                                                                                TAYLOR B. McNEEL
                                                                                UNITED STATES DISTRICT JUDGE